**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELLIOT SINGER, RACHEL SINGER, and DANIEL SINGER | ) | |
| Plaintiffs, | ) | Case No. |
| v. | ) | JURY DEMANDED |
| PRIMESOURCE HEALTH GROUP, LLC, SENIORSURE HEALTH PLANS, INC., ADVANTAGE CAPITAL HOLDINGS, LLC, PRIMEHEALTH GROUP, LLC, and DAVID FLEMING, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer (collectively, the "Singers"), by their attorneys, Ulmer & Berne, LLP, for their Complaint against Defendants PrimeSource Health Group, LLC, SeniorSure Health Plans, Inc., Advantage Capital Holdings, LLC, PrimeHealth Group, LLC, and David Fleming (collectively, the "Defendants"), state as follows:

## INTRODUCTION

1. Elliot and Daniel Singer bring this action to recover in excess of $400,000.00 in losses suffered under loans made to Defendants PrimeSource Health Group, LLC ("PrimeSource") and SeniorSure Health Plans, Inc. ("SeniorSure"), secured by four Promissory Notes (the "Notes") and certain Guaranty agreements executed by Defendant David Fleming ("Fleming"), in his individual capacity. Under the terms of the Notes and Guaranty agreements, the outstanding principal balance and interest under the Notes are past due and owing. Despite the Singers' repeated demands to Defendants for repayment under the Notes and Guaranty agreements, the principal balance and interest remains due, owing and unpaid. As a result of

their individual acts and omissions, Defendants each are liable for the amounts owed.

2. This case also involves the dissemination of a false Private Placement Memorandum (PPM) in support of a securities offering (the "Offering"). Specifically, in 2015, PrimeSource and Fleming undertook an equity raise and did so by allegedly selling "member interests" in PrimeSource. However, the Offering was nothing more than a sham transaction and was facilitated by materially false and misleading statements in the PPM and otherwise. The Singers invested equity in reliance on these fraudulent statements. Within a matter of months of the closing of the Offering, PrimeSource was in negotiations to sell the majority of its assets to Advantage Capital Holding since PrimeSource was, in actuality, in a distressed financial condition at the time of the Offering. The Singers lost their entire investment of over $200,000 in this fraudulent Offering.

3. The PPM and Offering violated numerous state and federal securities laws, including, without limitation, Sections 12 and 15 of the Securities Act of 1933 ("Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 5/12 of the Illinois Securities Law

4. The Singers seek to recover actual and punitive damages, and statutory and/or contractual attorneys' fees and costs, as a result of Defendants' misconduct.

## PARTIES

### Plaintiffs

5. Elliot Singer and Rachel Singer, are husband and wife, and reside at 6665 West Farm Acres, Cincinnati, Ohio.

6. Daniel Singer is Elliot Singer's brother and resides at 5 RockBridge Road, Lakewood, New Jersey.

**Defendants**

7. PrimeSource Health Group, LLC, is a Delaware corporation lawfully licensed to do business in Illinois, and whose corporate headquarters is located at 2100 East Lake Cook Road, Suite 1000, Buffalo Grove, Illinois.

8. PrimeSource, at all times relevant to this Lawsuit, owned and operated several wholly-owned companies located throughout the Midwest, including, PrimeSource Health Care Systems, Inc., an Illinois corporation with its headquarters and principal place of business at 2100 East Lake Cook Road, Suite 1000, Buffalo Grove, Illinois.

9. SeniorSure Health Plans, Inc., is an Oklahoma for-profit corporation lawfully licensed to conduct business in the state of Illinois, which sells and underwrites insurance policies in Illinois, among other places, and which maintains offices at 2100 East Lake Cook Road, Suite 1000, Buffalo Grove, Illinois.

10. David Fleming is an individual residing at 7 Parton Court, Lake Forest, Illinois, who has held himself out as a shareholder, president, and CEO of PrimeSource and SeniorSure.

11. Advantage Capital Holding, LLC, ("Advantage") is a Delaware corporation lawfully licensed to conduct business in Illinois, and whose corporate headquarters is located at 415 Bedford Road, Suite 102, Pleasantville, New York.

12. PrimeHealth Group, LLC, ("PrimeHealth") is an Illinois limited liability company lawfully licensed to conduct business in Illinois, which maintains offices at 2100 East Lake Cook Road, Suite 1000, Buffalo Grove, Illinois.

13. Advantage formed PrimeHealth on or about July 12, 2016, and as its parent company and/or owner, Advantage solely controls and directs the operations of PrimeHealth.

Upon information and belief, PrimeHealth is a mere continuation of the PrimeSource Health Care Systems, Inc. business under a new operating name.

14. Upon information and belief, Advantage, through PrimeHealth and other wholly-controlled entities, is the successor-in-interest to PrimeSource and SeniorSure.

## JURISDICTION AND VENUE

15. This dispute involves claims of breach of contract, violations of federal and state securities laws, and common law fraud.

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is an action by citizens of New Jersey and Ohio against citizens of Illinois, New York and Oklahoma, and the amount in controversy (exclusive of interest and costs) exceeds $75,000.

18. In connection with the acts alleged in the Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, wires and interstate telephone communications.

19. Venue is proper in this District pursuant to Section 22 of the Securities Act, Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the Singers' claims occurred in this judicial district. Venue is also proper in this District because Defendants consented to venue in this judicial district under one or more of the contractual agreements from which the Singers' claims arise, including, but not limited to,

the Notes and Guaranty agreements.

## FACTUAL BACKGROUND

**The Notes and Guaranty Agreements**

20. During the relevant period, PrimeSource and its related entities held themselves out as "the leader[s] in mobile healthcare innovation, serving seniors in long-term nursing facilities" and "one of America's oldest and largest privately owned providers of on-site mobile healthcare and billing services."

21. At all times relevant to this Lawsuit, SeniorSure was a captive insurance company that provided insurance policies exclusively to individuals residing in long-term care facilities that were "contracted with PrimeSource and their network of providers."

22. Between March of 2015 and February of 2016, the Singers loaned PrimeSource and SeniorSure several hundred thousands of dollars, secured by four separate Promissory Notes.

23. On March 16, 2015, SeniorSure issued a Promissory Note to Elliot Singer (executed by Fleming) promising to repay the principal sum of a $105,000 loan on or before March 25, 2016, together with interest accruing at an annual rate of 10 percent.

24. On October 1, 2015, PrimeSource issued a Promissory Note to Elliot Singer (executed by Fleming) promising to repay the principal sum of a $50,000 loan on or before August 31, 2016, at an annual rate of 10 percent interest. As of the filing of this Complaint, PrimeSource has only repaid $24,999 of the principal sum of the Note.

25. On February 26, 2016, PrimeSource issued another Promissory Note to Elliot Singer (executed by Fleming) promising to repay the principal sum of a $100,000 loan on or before July 1, 2016, together with $80,000 in interest.

26. On February 26, 2016, PrimeSource issued a Promissory Note to Daniel Singer

(executed by Fleming) promising to repay the principal sum of a $100,000 loan on or before July 1, 2016, together with $20,000 in interest.

27. Each of Notes provided that "[i]f any suit or action is instituted or attorneys are employed to collect this Note or any part thereof, the Borrower promises and agrees to pay all costs of collection, including reasonable attorneys' fees and court costs."

28. Each of the Notes was secured by separate Guaranty agreements executed by Fleming, on behalf of himself, in his individual capacity, and as CEO of PrimeSource Health Care Systems, Inc.

29. Under each Guaranty agreement, Fleming guaranteed payment of the principal and interest under each of the Notes, and all other amounts provided for in each Note. Fleming also agreed to "pay . . . upon demand all fees, costs and expenses incurred" in any legal or other proceeding brought by the Singers arising from or to enforce the obligations under the Guaranty agreements.

30. Finally, the Guaranty agreements related specifically to the February 26, 2016, Notes each contained a pledge of a $100,000 certificate of deposit held by Village Bank and Trust, which expired on July 1, 2016, as collateral for the Singers' loans.

31. Between March 25, 2016, and August 31, 2016, the Notes matured. Pursuant to the terms of the Notes, any and all amounts owed (together with interest) were immediately due and payable upon each Note's respective maturity date.

32. The Singers made numerous oral and written demands for repayment of the Notes. On February 17, 2017, counsel for the Singers sent a written demand letter via courier to Defendants, seeking repayment under both the Notes and the Guaranty agreements. Those demands went unanswered.

33. Despite repeated oral and written demand of the Singers for repayment under the Notes and Guaranty agreements, PrimeSource, SeniorSure and Fleming have not repaid the Singers the amounts due, owing and payable under the Notes and Guaranty agreements, including reasonable attorneys' fees and costs.

**The Fraudulent Securities Offering**

34. Beginning on or about April 8, 2015, PrimeSource undertook a securities offering, seeking to raise equity in a private placement offering in the amount of $3,350,000. The PPM provided that the Offering was intended to be conducted in accordance with Regulation D promulgated by the SEC under the Securities Act.

35. The Offering principally was sold through the efforts of Fleming.

36. The Offering was sold through numerous interstate telephone communications and a written PPM; was to be offered only to Accredited Investors; and was not a registered offering since, "This Offering is intended to be conducted as a private placement in accordance with Regulation D promulgated by the SEC under the 1933 Act."

37. According to the PPM, the $3,350,000 that PrimeSource was attempting to raise in the Offering would be used to pay income taxes that were due and owing; retire approximately $1 million of existing debt; and fund working capital needs of approximately $1.5 million. PrimeSource represented that it anticipated using the $1.5 million of working capital funds to expand into new markets and purchase vehicles and equipment to provide care and implement its marketing plan.

38. On or about August 29, 2015, Daniel Singer executed a subscription agreement for $100,500 in membership interests of PrimeSource, mailed the subscription agreement from his New Jersey residence to PrimeSource and wire transferred his investment funds from his

local bank to PrimeSource.

39. On or about September 17, 2015, Elliot and Rachel Singer executed a subscription agreement for $151,775 in membership interests of PrimeSource.

40. In order to induce the Singers to invest equity into PrimeSource, Fleming, on August 4, 2015, wrote separate letters to the Singers on behalf of himself and PrimeSource, thanking the Singers for their "interest in becoming an investor ***through our Private Placement Memorandum ('PPM')*** of three (3) Units of $33,500 per Unit." (Emphasis added) The letters from Fleming to the Singers guaranteed that "at no time shall your recoupment amount/return on investment be less than your original subscription amount."

41. Despite claiming to be an exempt Regulation D offering, it does not appear, based on a review of publicly-available records, that PrimeSource ever filed a Form D with the SEC.

42. The PPM contained one or more untrue statements of material fact, or omissions of material fact, necessary in order to make the statements, in light of the circumstances under which they were made, not misleading (and the Singers not knowing of such untruth or omission). These include, but are not limited to:

a. This was a Regulation D offering;

b. The Members agreed under the Company Agreements that the Net Agreed Value of the Contributed Interests is equal to $30,000,000;

c. The historical financial information, attached as Exhibit D to the PPM, was accurate and true; and

d. The projected financial information, attached as Exhibit D to the PPM, was represented to be a good faith projection but in fact Defendants did not believe nor had a reasonable basis to believe the projections at the time

they were made.

43. Defendants also engaged in a continuing pattern of making material oral misrepresentations and omissions as to the PrimeSource's financial condition throughout the relevant period, including that PrimeSource was worth $30 million at the time of the Offering and that there is no reason that PrimeSource cannot be worth $60 million in two years.

44. At the time of the Offering, Fleming and PrimeSource failed to disclose to investors the true financial condition of PrimeSource. Indeed, upon information and belief, Fleming knew at the time of the Offering that PrimeSource was in a distressed financial condition.

45. PrimeSource has not followed the corporate formalities required by a legitimate limited liability corporation. For example, the Singers never received Form K1-s for any years, no certificates of membership in PrimeSource, and no distributions of profits or losses.

46. On February 17, 2017, counsel for the Singers sent Notice to PrimeSource, Advantage, PrimeHealth and Fleming, seeking rescission for the equity investments and tendering their equity interests in return. No response was received from Defendants.

**PrimeSource Reorganizes as PrimeHealth and Advantage Acquires It and SeniorSure**

47. On July 12, 2016, Advantage organized and incorporated PrimeHealth in Illinois.

48. Subsequently, in or around October of 2016, PrimeSource sold nearly all of its assets to Advantage under an asset purchase agreement in which PrimeHealth acquired the assets and assumed certain liabilities of PrimeSource.

49. Upon information and belief, Advantage also purchased SeniorSure through a separate agreement, in which another company wholly-owned by Advantage, Ability Insurance Company ("Ability Insurance"), acquired the assets of SeniorSure.

50. Upon information and belief, Advantage's acquisition of SeniorSure through Ability Insurance has not been finalized as of the filing of this Lawsuit, and is currently pending before the Oklahoma Insurance Department.

51. On or before July 26, 2016, counsel for PrimeSource sent letters to the Singers attaching a Notice of Special Meeting of the Members of PrimeSource Health Group, LLC (the "Notice"). The letter from counsel provided that, as part of the asset sale to Advantage, "many outstanding debts and loans to PrimeSource are being reimbursed, in whole or in part." It also explained "the sale of the assets ***and the corresponding assumption of liabilities*** is necessary at this juncture due to [sic] current financial position of PrimeSource." (Emphasis added.) The Notice provided that "as part of the Asset Purchase Agreement, PrimeHealth … ***will assume a substantial portion of the liabilities of PrimeSource*** … and its affiliated entities." (Emphasis added.)

52. Neither the July 26, 2016, letter from counsel nor the Notice attached thereto, mentioned or addressed the separate transaction involving Advantage and SeniorSure.

53. To date, the Singers have not been provided a copy of either of the asset purchase agreements involving Defendants.

54. Upon information and belief, the Notes were included as part of the liabilities assumed by Advantage and PrimeHealth.

**COUNT ONE—BREACH OF PROMISSORY NOTES**
**(Against Defendants PrimeSource, SeniorSure, Advantage and PrimeHealth)**

55. The Singers repeat and reallege paragraphs 1 through 54 as if fully set forth herein.

56. Between March 16, 2015, and February 26, 2016, the Singers executed four Notes with PrimeSource and SeniorSure, each with a maturity date of less than one year and interest accruing at either a flat rate or an annual rate of 10 percent.

57. The Notes required repayment of the principal sum and all accrued interest by the maturity date of each Note, respectively.

58. The Singers fully performed their obligations under the Notes having loaned the principal sum under each Note to either PrimeSource or SeniorSure.

59. Upon information and belief, Advantage, through its wholly-owned companies, assumed liability under the Notes from PrimeSource and SeniorSure.

60. Each of the corporate defendants have breached the Notes by failing to repay the principal sums due together with any accrued interest, as demonstrated in the following chart:

| **LOANS** | **MATURITY** | **OUTSTANDING** | **INTEREST** |
|---|---|---|---|
| Loan A – Elliot Singer to SeniorSure | 3/25/15 | $100,500.00 | $19,531.39 |
| Loan B- Elliot Singer to PrimeSource | 10/31/15 | $25,001.00 | $2,424.66 |
| Loan C- Elliot Singer to PrimeSource | 2/29/16 | $100,000.00 | $80.000.00 |
| Loan D – Daniel Singer to PrimeSource | 2/29/16 | $100,000.00 | $20,000.00 |

61. The Singers have been damaged by Defendants' breaches of the Notes and failure to repay monies due and owning in an amount in excess of $447,457.05.

WHEREFORE, Plaintiffs Daniel Singer and Elliot Singer pray for judgment against Defendants PrimeSource Health Group, LLC, SeniorSure Health Plans, Inc., Advantage Capital Holdings, LLC, and PrimeSource Group, LLC, on their breach of promissory note claim, and for damages in an amount in excess of $447,457.05, reasonable costs and attorneys' fees, and any other or further remedy that may be just under the circumstances.

**COUNT TWO—BREACH OF GUARANTY AGREEMENTS**
**(Against Defendant Fleming)**

62. The Singers repeat and reallege paragraphs 1 through 61 as if fully set forth

herein.

63. Fleming, in his individual capacity, guaranteed repayment of the principal and interest under the Notes issued by PrimeSource and SeniorSure to the Singers between March 16, 2015, and February 26, 2016, including, all amounts provided for in each respective Note.

64. Under the Guaranty agreements executed by Fleming, he also agreed to "pay upon demand all fees, costs and expenses incurred" in any legal or other proceeding brought by the Singers arising from or to enforce the obligations under the Guaranty agreements.

65. As of the filing of this Lawsuit, principal and interest due, owing and payable to the Singers under the Notes is (and remains) unpaid.

66. Despite demand for payment pursuant to the Guaranty agreements, Fleming has refused to repay the monies owed to the Singers.

67. Fleming has also refused, or failed, to pay out the proceeds of, or turn over, the collateral pledged under each of the Guaranty agreements—a $100,000 certificate of deposit held by Village Bank and Trust—in connection with the February 29, 2016, Notes.

68. The Singers have been damaged in an amount in excess of $447,457.05 because of Fleming's failure to perform under the Guaranty agreements.

WHEREFORE, Plaintiffs Daniel Singer and Elliot Singer pray for judgment against Defendant David Fleming, on their breach of guaranty claim, and for damages in an amount in excess of $447,457.05, reasonable costs and attorneys' fees, and any other or further remedy that may be just under the circumstances.

**COUNT THREE—VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT**
**(Against Defendant PrimeSource)**

69. The Singers repeat and reallege paragraphs 1 through 68 as if fully set forth herein.

70. The PPM was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts, as set forth in greater detail above.

71. PrimeSource is the issuer of the Offering. PrimeSource issued, caused to be issued and participated in the issuance of materially false and misleading written statements which were contained in the PPM, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.

72. PrimeSource had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or acted with reckless disregard for the truth in that it failed to ascertain and disclose such facts, even though the facts were available.

73. The Singers acquired their equity interests pursuant to the PPM and were damaged as a result.

74. At the time they purchased the equity interests in PrimeSource, the Singers were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonable discovered those facts.

75. By reason of the conduct alleged herein, PrimeSource violated Section 12(a)(2) of the Securities Act. The Singers have the right to rescind and recover the consideration paid for their equity interests and hereby elect to rescind and tender their equity interests to Defendant.

76. Less than one year has elapsed from the time the Singers discovered or reasonably could have discovered the facts upon which this Complaint is based to the time of filing this Complaint. Less than three years have elapsed from the time that those securities upon which this claim is asserted were offered to the Singers to the time of filing this Complaint.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for

judgment against Defendant PrimeSource Health Group, LLC, on their claim for violation of Section 12(a)(2) of the Securities Act, and for rescission of their investments or, alternatively, damages in an amount in excess of $75,000, and any other or further remedy that may be just under the circumstances.

**COUNT FOUR—VIOLATION OF SECTION 15 OF THE SECURITIES ACT**
**(Against Defendant Fleming)**

77. The Singers repeat and reallege paragraphs 1 through 76 as if fully set forth herein.

78. At all times relevant to this Lawsuit, Fleming held himself out as the owner, president, and CEO of PrimeSource.

79. Fleming acted as a control person of PrimeSource within the meaning of Section 15 of the Securities Act as alleged herein. By virtue of his ownership of a controlling interest in PrimeSource, and Managing Member of PrimeSource, Fleming's participation in and awareness of the operations of PrimeSource and intimate knowledge of PrimeSource's true business condition, and his ability to speak to investors on behalf of PrimeSource, Fleming had the power to influence and control and did influence and control, directly or indirectly, the decision-making of PrimeSource, including, the dissemination and content of false and/or misleading information, and misrepresentations of material fact, to the Singers related to their investments alleged herein.

80. Fleming had direct involvement in the day-to-day operations of PrimeSource and therefore is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged in this Lawsuit, and, in fact, Fleming exercised that power and control over PrimeSource.

81. By virtue of his position as a controlling person, Fleming is directly and personally liable under Section 15 of the Securities Act, and a direct and proximate cause of the

damages incurred by the Singers in connection with their investments into PrimeSource.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for judgment against Defendant David Fleming, as a controlling person of PrimeSource pursuant to Section 15 of the Securities Act, and for monetary damages in an amount in excess of $75,000, and any other or further remedy that may be just under the circumstances.

**COUNT FIVE—VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**
**(Against Defendants PrimeSource and Fleming)**

82. The Singers repeat and reallege paragraphs 1 through 81 as if fully set forth herein.

83. Section 10b of the Exhange Act and Rule 10b-5 prohibits the use of interstate commerce to perpetuate a fraud on any person in connection with the purchase or sale of securities.

84. PrimeSource and Fleming, directly or indirectly, made material misrepresentations and omissions by use of the means and instrumentalities of interstate commerce or the mails and wires, as detailed above, in connection with the purchase and sale of securities to the Singers.

85. PrimeSource and Fleming perpetrated this fraud on the Singers intentionally, knowingly or recklessly and/or exhibited a strong inference of scienter though a motive and opportunity to defraud.

86. The Singers relied upon Defendants' material misrepresentations, and such reliance was reasonable under the circumstances because they could not have discovered PrimeSource's and Fleming's misconduct through reasonable diligence.

87. By engaging in the conduct described above and misrepresenting material facts to the Singers, PrimeSource and Fleming violated Section 10(b) of the Exchange Act and Rule 10b-

5 promulgated thereunder and their individual and collective misconduct is the proximate cause of the Singer's losses.

88. The Singers have been damaged as a direct and proximate result of the fraudulent conduct perpetuated by PrimeSource and Fleming in an amount in excess of $75,000.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for judgment against Defendants PrimeSource Health Group, LLC, and David Fleming, on their claim for violation of Section 10 of the Exchange Act and Rule 10b-5 thereunder, and for damages in an amount in excess of $75,000, and any other or further remedy that may be just under the circumstances.

**COUNT SIX—VIOLATION OF SECTION 20 OF THE EXCHANGE ACT**
**(Against Defendant Fleming)**

89. The Singers repeat and reallege paragraphs 1 through 88 as if fully set forth herein.

90. At all times relevant to this Lawsuit, Fleming held himself out as the owner, president, and CEO of PrimeSource.

91. Fleming acted as a control person of PrimeSource within the meaning of Section 20 of the Securities Act as alleged herein. By virtue of his ownership of a controlling interest in PrimeSource, and Managing Member of PrimeSource, Fleming's participation in and/or awareness of the operations of PrimeSource and intimate knowledge of PrimeSource's true business condition, and his ability to speak to investors on behalf of PrimeSource, Fleming had the power to influence and control and did influence and control, directly or indirectly, the decision making of PrimeSource, including, the dissemination and content of false and/or misleading information, and misrepresentations of material fact, to the Singers related to their investments alleged herein.

92. Fleming had direct involvement in the day-to-day operations of PrimeSource and therefore is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged in this Lawsuit, and, in fact, Fleming exercised that power and control over PrimeSource.

93. By virtue of his position as a controlling person, Fleming is directly and personally liable under Section 20 of the Exchange Act, 15 U.S.C. § 78(a), and a direct and proximate cause of the damages incurred by the Singers in connection with their investments into PrimeSource.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for judgment against Defendant David Fleming, as a controlling person of PrimeSource pursuant to Section 20 of the Exchange Act, and for monetary damages in an amount in excess of $75,000, and any other or further remedy that may be just under the circumstances.

**COUNT SEVEN—VIOLATION OF THE ILLINOIS SECURITIES ACT**
**(Against Defendants PrimeSource and Fleming)**

94. The Singers repeat and reallege paragraphs 1 through 93 as if fully set forth herein.

95. The PPM and Offering to the Singers in the form of membership interests in PrimeSource constituted the sale of "securities" for the purposes of Section 2.1 of the Illinois Securities Law of 1953, 815 ILCS 5/1, *et seq.* (the "Securities Law").

96. By engaging in the acts or omissions described above and misrepresenting material facts to the Singers, PrimeSource and Fleming engaged in a transaction, practice or course of business in conjunction with the oral misrepresentations or omissions, PPM and Offering that worked a fraud or deceit upon the Singers in violation of Section 5/12(f) of the Securities Law.

97. By engaging in the acts or omissions described above and misrepresenting material facts to the Singers, PrimeSource and Fleming obtained money and/or property through the sale of securities by means of an untrue statement of material fact in violation of Section 5/12(g) of the Securities Law.

98. By engaging in the acts or omissions described above and misrepresenting material facts to the Singers, PrimeSource and Fleming employed a device, scheme or artifice to defraud the Singers in connection with the oral misrepresentations or omissions, PPM and Offering in violation of Section 5/12(i) of the Securities Law.

99. The Singers' reliance upon PrimeSource's and Fleming's acts and omissions, including, but not limited to, misrepresentations of material fact, was reasonable under the circumstances because they could not have discovered PrimeSource's and Fleming's misconduct through reasonable diligence.

100. Pursuant to Section 5/13(a) of the Securities Law, the Singers are entitled to recover the "full amount paid together with interest from the date of payment" in connection with the Offering, in addition to "costs together with reasonable fees and expenses" incurred in pursuing claims under the Securities Law.

101. On February 17, 2017, counsel for the Singers sent Notice to Defendants seeking rescission for their equity interests in PrimeSource and tendering their equity interests in return. No response was received from Defendants.

102. The Singers tender their equity interests in PrimeSource in return for rescission of their investments.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for judgment against Defendants PrimeSource Health Group, LLC, and David Fleming, under the

Illinois Securities Law, and for damages in an amount in excess of $75,000.00, reasonable costs and attorneys' fees, and any other or further remedy that may be just under the circumstances.

**COUNT EIGHT—COMMON LAW FRAUD**
**(Against Defendants PrimeSource and Fleming)**

103. The Singers repeat and reallege paragraphs 1 through 102 as if fully set forth herein.

104. PrimeSource and Fleming knowingly made inaccurate, misleading, or untrue statements of material facts, omitted to state facts necessary to make the statements made not misleading, and/or concealed and failed to adequately disclose material facts in the oral misrepresentations or omissions, PPM and correspondence to the Singers.

105. By engaging in the acts or omissions described above and misrepresenting material facts to the Singers, as detailed above, PrimeSource and Fleming acted with purposeful and/or deliberate intent, or otherwise, recklessly defrauded the Singers.

106. The Singers reasonably relied on the statements of PrimeSource and Fleming made in connection with Offering, and they justifiably relied upon the truth of those statements when making their investments in PrimeSource.

107. The fraudulent and misleading acts and omissions of PrimeSource and Fleming with respect to the Offering, including, their blatant deceit of the Singers with respect to the sale of membership interests in PrimeSource as detailed above, were willful and wanton and outrageous.

108. The Singers have been damaged as a direct result of their reliance on the fraudulent Offering by PrimeSource and Fleming in an amount in excess of $75,000.

WHEREFORE, Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer pray for judgment against Defendants PrimeSource Health Group, LLC, and David Fleming, on their

common law fraud claim, and for actual damages in an amount in excess of $75, 000, and punitive damages in light of the fraudulent misconduct, and any other or further remedy that may be just under the circumstances.

**JURY DEMAND**

Plaintiffs Elliot Singer, Rachel Singer and Daniel Singer hereby demand a trial by jury on all claims triable.

DATED: March 17, 2017

s/ Booker T. Coleman, Jr.

Patrick G. King (#61212235)
Ronald S. Betman (#6193103)
Booker T. Coleman, Jr. (#6305324)
Ulmer & Berne LLP
500 W. Madison, Suite 3600
Chicago, IL 60661
312.658.6500
312.658.6501 (fax)
pking@ulmer.com
rbetman@ulmer.com
bcoleman@ulmer.com

***Attorneys for Plaintiffs***